United States District Court
Southern District of Texas
**ENTERED**
March 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISIDRO CARMONA SANCHEZ, TDCJ #02018197, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-20-03888 |
| R JENKINS, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Isidro Carmona Sanchez (TDCJ #02018197) is a state prisoner in custody of the Texas Department of Criminal Justice ("TDCJ"). Sanchez filed this civil rights action under 42 U.S.C. § 1983, principally alleging that Defendant Assistant Warden R. Jenkins at the Ellis Unit used excessive force against him when he was restrained. At the Court's request, Sanchez filed a More Definite Statement to clarify his claims. Doc. No. 10. Pending are Jenkins's motion for judgment on the pleadings (Doc. No. 43) and motions to substitute counsel (Doc. Nos. 46 & 48). The Court has carefully considered the pleadings, motions, responses, and the applicable law, and concludes as follows.

I.  **BACKGROUND**

Sanchez alleges that on July 13, 2020, during a Unit Classification Committee (UCC) hearing in the UCC office at the Ellis Unit, he was injured in an altercation with Defendant Robert Jenkins, the Assistant Warden and presiding officer at the UCC hearing.

1 / 14

Doc. No. 1 at 4. Sanchez claims that he was handcuffed with his hands behind his back and was sitting in a chair behind Captain Johnson, a UCC officer. Doc. No. 10 at 1. Sanchez states that he was staring at Captain Johnson while Jenkins was writing something down. *Id.* Sanchez asked Jenkins what he was there for, and Jenkins told him he was re-classifying him as G-5 for the assault case on Mrs. Kimball, who claimed that Sanchez had assaulted her by touching her in the groin when he was at the Byrd Unit. *Id.* at 1-2. Sanchez asked Jenkins why he was denied a hearing for that case, and Jenkins answered, "I don't know, grieve it." *Id.* at 2. Sanchez then said, "you don't know why I was denied [a] hearing?" and "you're going to G-5 me just like that?" *Id.*

According to Sanchez, Jenkins jumped out of his chair, walked behind Captain Johnson, and started striking Sanchez in the face with closed fists. *Id.* Then officers came into the room and put Sanchez on the ground in shackles. Other officers had Sanchez pinned down with their knees on his back. Sanchez told them they were hurting him and they picked him up and took him to the infirmary. *Id.* Sanchez alleges that Warden Kelly Strong was standing behind the officer filming Sanchez, and Sanchez addressed her, saying, "you know what is going on, you were Warden at the Wynne Unit in 2016-2017 where I was also being harassed by TDCJ staff." *Id.* Strong allegedly walked back into her office. Sanchez was escorted back to his cell with only an ice pack, and no x-rays were taken. He alleges that he suffered a black eye, swollen left side of his face, bruises, bumps on his head, and neck pain. *Id.* at 3.

Sanchez was charged with assault on Jenkins in disciplinary case number 20200234194 for kicking him in the groin area in connection with the altercation on July 13, 2020. *Id.* at 4-5. Sanchez told his counsel substitute, M. Daigle, that he needed the names of the two escort officers as witnesses. Daigle said that Sanchez had to provide her with the names of these potential witnesses, but Sanchez states that he was new to the unit and did not know their names. The only witness he could name was Captain Johnson. *Id.* at 5.

Sanchez wrote questions for the witnesses that would be at the hearing. Before the hearing, however, he was moved to another cell and was told he would not have a cellmate. *Id.* When he arrived at the cell, the guards informed him that he would have a cellmate, and Sanchez objected and immediately requested a OPI (Offender Protection Investigation) form because he felt his life was in danger. *Id.* at 5, 13-14. Defendant Lieutenant Aleman came in, asked him why he was refusing housing, and took his property, which included his notes for the hearing. *Id.* The next day he was escorted to the hearing without his legal work. Sanchez asked Captain Livas, the Disciplinary Hearing Officer, to help him get his legal work because his questions for the hearing were among the things taken away. *Id.* at 14. Livas told him to just ask the questions he remembered. Sanchez asked Livas for the names of the two escort officers but Livas stated that he could not get those. Livas told Sanchez to just answer "yes" or "no" and threatened to end the hearing if Sanchez did not comply with instructions. *Id.* Sanchez alleges that Livas told him that he would have beat

him too if Sanchez had kicked him in the groin. *Id.* Sanchez contends that this comment shows that Livas had convicted him before hearing the witness testimony. *Id.* at 15.

At the disciplinary hearing, Sanchez asked Jenkins how Sanchez could have kicked him since Jenkins was behind the table, and Jenkins testified that Sanchez began to be aggressive with the two escorts after he had ordered Sanchez out of the office. *Id.* Jenkins also stated that he got up to help the officers and Sanchez kicked him, and that was the reason he punched Sanchez in the face. *Id.* Sanchez asked for the names of the two escort officers, but Jenkins stated that he did not remember their names. *Id.* Jenkins said that Sanchez was in the office because Mrs. Kimball alleged that Sanchez had touched her in the groin. *Id.* Sanchez asked Jenkins if that was the reason Jenkins punched Sanchez, and Jenkins said no. *Id.* The call ended because Sanchez could not remember any of his other questions.

After hearing testimony from Jenkins, Livas called Johnson, who gave the same testimony as Jenkins did about the incident. *Id.* Sanchez asked her for the names of the two escort officers, but Johnson stated she did not know who they were. *Id.* Sanchez alleges that the lack of identification of the other officers is a violation of TDCJ rules regarding uses of force. *Id.* at 16. Sanchez alleges that Livas went with the testimony of the two officers and found him guilty of the offense even though they violated TDCJ policy regarding the other witnesses. *Id.* Sanchez alleges that he appealed his disciplinary conviction, and the case was overturned, but he did not receive a new hearing and his punishment of restrictive housing remained in place. *Id.*

Sanchez claims that Captain Johnson lied at his disciplinary hearing and that she took Jenkins's side regarding what happened on July 13, 2020. *Id.* at 9-10. Sanchez alleges that Warden Kelly Strong knew what was going on and that he was being harassed by the staff. *Id.* at 11. He alleges that, as the highest-ranking officer on the unit, the investigation goes to her and she sends the recommendation to Huntsville. Strong allegedly recommended that Sanchez be placed in restrictive housing and tagged as an X threat to the physical safety of others. *Id.* at 12. He states that he remains in restrictive housing even though his case regarding the assault on Jenkins has allegedly been overturned. *Id.*[1] He alleges that Strong is responsible for the actions of her assistant, Jenkins, and that she protected a criminal. *Id.* Sanchez seeks an unspecified amount of compensatory and punitive damages and "for the court to file charges." Doc. No. 1 at 4.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) permits motions for judgment on the pleadings. Rule 12(c) motion for judgment on the pleadings may be filed after the answer and is treated as a motion to dismiss for "failure to state a claim on which relief may be granted." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam); FED. R. CIV. P. 12(c). In considering a motion to dismiss for failure to state a claim, the district court construes the allegations in the complaint favorably to the pleader and accepts as true all well-pled facts in the complaint. *La Porte Construction Co. v. Bayshore Nat'l Bank of*

---

[1] He does not allege that his disciplinary case regarding assaulting Mrs. Kimball has been overturned, however, or that any of the consequences of that conviction have been abated.

*La Porte, Tex.*, 805 F.2d 1254, 1255 (5th Cir. 1986). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that are no more than legal conclusions "are not entitled to the assumption of truth." *Id.* at 680. While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and internal footnote omitted).

### B. Discussion

Jenkins moves for judgment on the pleadings for the claims against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court). Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter*

*alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment unless it is waived or abrogated by Congress. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The Eleventh Amendment also bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Therefore, Sanchez's official capacity claims for monetary damages against Jenkins, and all other named TDCJ officials in their official capacities, are subject to dismissal.

An exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Sanchez primarily seeks monetary damages in this case, but he also asks that the court file criminal charges. However, a plaintiff cannot pursue criminal charges against a defendant in a section 1983 lawsuit. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a section 1983 plaintiff "does not have a constitutional right to have someone criminally prosecuted"). Sanchez does not

seek other injunctive relief. *See* Doc. No. 1 at 4. Therefore, his official capacity claims against all defendants are dismissed as barred by sovereign immunity.

### III. Individual Capacity Claims and the Prison Litigation Reform Act

Because Sanchez is an inmate who proceeds *in forma pauperis*, the Court is required by the Prison Litigation Reform Act (the "PLRA") to scrutinize the complaint and dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). Regarding the individual capacity claims against Johnson, Strong, Livas, and Aleman, he does not state a claim for which relief may be granted, as explained below.

#### 1. Disciplinary Hearing Claims

Sanchez complains that Johnson, as a witness, lied in his disciplinary hearing regarding what happened in the UCC office on July 13, 2020, and sided with Jenkins. He also alleges that Aleman, a prison guard, confiscated his property, including legal notes for his disciplinary hearing, when Sanchez refused housing. He also asserts that Livas, the hearing officer, did not permit him to call the two escort guards as witnesses because Livas required Sanchez to name them, which Sanchez could not do, and that the Defendants violated TDCJ policy by failing to identify those officers. Broadly construing these claims, Sanchez alleges that these individuals violated his Due Process rights in connection with his disciplinary hearing.

In the disciplinary hearing context, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Even so, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). In particular, only those sanctions that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id.* at 487. For example, Texas inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned. *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000)(addressing the mandatory supervision scheme in place prior to September 1, 1996); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) (addressing the mandatory supervision scheme in place before and after September 1, 1996). Thus, if a prisoner is eligible for mandatory supervision, prison officials may not forfeit good-time credit during a prison disciplinary hearing without providing the requisite level of due process.

The pleadings and public records indicate that Sanchez is in custody pursuant to convictions for murder and aggravated assault, with a deadly weapons finding.[2] Therefore, he is not eligible for mandatory supervision and cannot show that any loss of good time

---

[2] *See* Doc. No. 10 at 8; Texas Department of Criminal Justice Inmate Search, last visited Mar. 15, 2022.

credits, if applicable, would implicate a liberty interest. *See* Tex. Gov't Code § 508.149(a)(2), (7). Sanchez alleges that he is in restrictive custody because Warden Strong classified him as an X threat to the physical safety of others even though his disciplinary case regarding Jenkins was overturned. However, he does not allege that his disciplinary case regarding assaulting Mrs. Kimball at the Boyd Unit and another case at the Boyd Unit for threatening staff have been overturned or dispute his convictions for murder and aggravated assault with a deadly weapon finding. Sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The restrictions alleged by Sanchez do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See id.* Further, reductions in a prisoner's class status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi*, 211 F.3d at 958; *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Finally, to the extent that Sanchez claims that the Defendants failed to follow TDCJ policies does not implicate a constitutional right. *See Myers v. Kelvenhagen,* 97 F.3d 91, 94 (5th Cir. 1996). Therefore, his claims against Johnson, Aleman, Livas, and Strong in connection with his disciplinary proceeding must be dismissed for failure to state a claim for which relief may be granted.

## 2. **Confiscation of Legal Materials**

Sanchez alleges that Aleman confiscated his legal materials before his disciplinary hearing. To the extent that Sanchez's allegations could be broadly construed as an access-to-courts claim,[3] he does not state a claim for which relief may be granted.

Prisoners have a constitutionally protected right of access to the courts. S*ee Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith,* 430 U.S. 817, 821, 828 (1977)). However, a prisoner's right of access to courts is limited and "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *See Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.), *cert. denied,* 522 U.S. 995 (1997)). Hence, an inmate alleging denial of the right of access to courts must demonstrate a relevant, actual injury stemming from the defendant's unconstitutional conduct. *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (citing *Lewis*, 518 U.S. at 351); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993). In particular, an inmate must "demonstrate that a nonfrivolous legal claim has been frustrated or was being

---

[3] Any claim against Aleman alleging an intentional and unauthorized deprivation of property is barred by the *Parratt-Hudson* doctrine. **Error! Main Document Only.**See *Hudson v. Palmer,* 468 U.S. 517, 534 (1984); *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986). Because **Error! Main Document Only.**Texas provides an adequate post-deprivation remedy for inmates whose property has been taken or destroyed in an unauthorized manner, Sanchez's complaint regarding the unauthorized loss or deprivation of his property has no basis in federal law. *See Myers v. Klevenhagen,* 97 F.3d 91, 95 (5th Cir.1996); *Aguilar v. Chastain,* 923 S.W.2d 740, 743-44 (Tex. Crim. App.1996); *see also* TEX. GOV'T CODE §§ 501.007, 501.008; *Murphy v. Collins,* 26 F.3d 541, 543-44 (5th Cir. 1994). Therefore, to the extent that Sanchez claims a deprivation of property under the Due Process Clause, that claim is dismissed.

impeded." *Lewis*, 518 U.S. at 353 & n. 3. Thus, the right of access to courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *See Christopher v. Harbury,* 536 U.S. 403, 415 (2002).

As explained above, Sanchez does not have a non-frivolous claim regarding his disciplinary hearing based on the Due Process Clause. Further, he discloses that the disciplinary charge was overturned. Therefore, he cannot establish that he suffered an injury in connection with the confiscation of his legal materials, *see id.*, and his access-to-courts claim must be dismissed.

### 3. Supervisory Claims against Warden Strong

Sanchez alleges that Warden Strong is responsible for the actions of Jenkins. Supervisory officials like Warden Strong are not liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins*, 828 F.2d at 304); *see also Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Thus, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally

result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted).

Although Sanchez sued Strong because she is the "highest ranking officer" and was allegedly "responsible for the actions of Jenkins," he does not allege facts to show that Strong had any personal involvement in the altercation or that she was subjectively aware of a serious risk of harm to him and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). In addition, he does not plead facts to show that Strong implemented an unconstitutional policy that causally resulted in a constitutional injury. *Porter*, 659 F.3d at 446. Accordingly, he fails to state facts to show that Strong violated his constitutional rights.

### 4. Excessive Force Claims against Jenkins

Jenkins filed an advisory stating that fact issues preclude summary judgment on Sanchez's claim against him for excessive force. Therefore, Sanchez's claims against Jenkins for excessive force remain for adjudication.

### IV. Conclusion and Order

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendant Robert Jenkins's motion for judgment on the pleadings for the claims against him in his official capacity (Doc. No. 43) is **GRANTED**, and the official capacity claims against Jenkins and all of the other Defendants are **DISMISSED** as barred by the Eleventh Amendment immunity.

2. Sanchez's claims against Captain Johnson, Lieutenant Aleman, Captain Livas,

and Warden Kelly Strong are **DISMISSED** with prejudice for failure to state a claim for which relief may be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A. **Sanchez's excessive force claim against Assistant Warden Robert Jenkins in his individual capacity is the sole claim remaining for adjudication.**

3. Based on Jenkins's advisory that fact issues exist and that this case is not amenable to summary judgment regarding the excessive force claim, the stay of discovery as to Jenkins is **LIFTED**, and the protective order is **CANCELLED**, and **Defendant Jenkins shall respond to Sanchez's discovery requests and comply with disclosure requirements within thirty days of the date of this Order regarding the sole remaining excessive force claim.**

4. Defendant's motion to substitute (Doc. No. 48) is **GRANTED**, and Penny Maley is **SUBSTITUTED** as the counsel of record for Jenkins. Defendant's prior motion to substitute (Doc. No. 46) is **DISMISSED as MOOT**.

5. **Within thirty (30) days of the date of this Order**, the parties shall submit a proposed Joint Scheduling Order with proposed relevant dates regarding setting this case for trial.

The Clerk will enter this Order and send a copy to the parties.

SIGNED at Houston, Texas, this ___22___ day of March 2022.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE